UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES GRAVES,                          )
                                       )
        Petitioner,                    )
                                       )
        vs.                            )          No. 4:12-CV-1093-SPM
                                       )
JAY CASSADY,[1]                        )
                                       )
        Respondent.                    )

## MEMORANDUM AND ORDER

This matter is before the Court on the *pro se* petition of Missouri state prisoner James Graves ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 14).

I.    **FACTUAL BACKGROUND**

The following background is taken from the Missouri Court of Appeals' opinion affirming the motion court's denial of post-conviction relief:

> On June 9, 2005 the State charged [Petitioner] with first-degree murder and armed criminal action. The evidence presented at trial, viewed in the light most favorable to the verdict, is as follows.
> In April 2005, Daryl Patterson (Patterson) lived in the 4900 block of Beacon Street. In the early morning hours of April 22, 2005, Greg Hall (Hall) and Tanya Blocker (Blocker) were walking on Beacon Street getting high. Julius Backys (Backys) pulled up beside them in a black car and asked Hall where he could buy some drugs. Backys told Hall he wanted a "fifty." Hall asked Backys for the money and Backys insisted that Hall get the drugs first. Hall walked to Patterson's house to get the drugs. While Hall was gone, Blocker asked Backys

---

[1] Jay Cassady is currently the warden of Jefferson City Correctional Center, where Petitioner is incarcerated. Jay Cassady should therefore be substituted for Jeff Noman as the respondent in this case. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

for a cigarette, which he gave her, and she sat down in the passenger seat of Backys's car. Backys asked Blocker to come to his house and "kick it with him," and Blocker refused. Hall returned to the car and told Backys that he could not get the drugs without the money.

[Petitioner] then approached the driver's side door of Backys's car and told Blocker and Hall to "get back." As [Petitioner] was talking to Backys, Blocker and Hall moved back. [Petitioner] then shot Backys six times in the head and neck. Backys attempted to drive away but lost control of the vehicle and crashed into another car. Backys died from the gunshot wounds.

Larry Smallwood (Smallwood) testified that on the day of the shooting he was sleeping at Patterson's house. At one point, Patterson woke up Smallwood and told him to take a coat outside to [Petitioner]. When Smallwood got outside, he saw all the neighbors outside and a car crashed into another car. After Smallwood gave [Petitioner] the coat, [Petitioner] asked if "all those police down there still?" Smallwood told [Petitioner] yes.

Patterson testified that a couple of days after the shooting, [Petitioner] asked Patterson to bring a book bag [Petitioner] had left at Patterson's house to [Petitioner's] grandmother's house. Patterson testified that inside the bag he found homework and other papers, CDs, and some bullets. At some point after the shooting, [Petitioner] told Patterson "something like sucker ganked something or pulled a gank move" or "that the buzzard tried to gank me."

The jury convicted [Petitioner] on both counts and the court sentenced [Petitioner] to life imprisonment without the possibility of parole on the first-degree murder conviction and to a concurrent 25-year sentence on the armed criminal action conviction.

Resp't Ex. M at 2-3.

In his direct appeal, Petitioner raised five points of trial court error: (1) the trial court erred in not declaring a mistrial when Officer Randolph testified that Petitioner "had been involved in a foot chase"; (2) it erred in allowing the prosecutor to ask the venire panel questions regarding the burden of proof; (3) it erred in allowing out-of-court statements by Darryl Patterson and Larry Smallwood; (4) it erred in allowing the prosecutor to question Patterson and Smallwood about the truthfulness of their testimony; and (5) it erred in allowing Tonya Blocker's recorded statements to be used to impeach her trial testimony. Resp't Ex. E at 15-19. The Missouri Court of Appeals for the Eastern District affirmed the conviction and sentence. Resp't Ex. I.

Petitioner filed a timely *pro se* motion for post-conviction relief. Resp't Ex. J at 3-25. Through counsel, Petitioner later filed an amended motion for post-conviction relief, in which Petitioner argued that trial counsel was ineffective for (1) failing to object to the admission of evidence concerning threats made and physical altercations between unknown individuals and both Smallwood and Blocker and (2) not allowing Petitioner to testify on his own behalf at trial. Resp't Ex. J at 35-36. The motion court denied the motion without an evidentiary hearing. Resp't Ex. J at 52-65. Petitioner appealed this ruling, Resp't Ex. K, and the Missouri Court of Appeals affirmed the motion court's judgment, Resp't Ex. M.

Petitioner later filed a petition for state habeas court relief under Missouri Supreme Court Rule 16 in the Circuit Court of Cole County, Missouri, Resp't Ex. N, in which he argued that (1) the prosecution had withheld certain witness audiotapes in violation of a trial court discovery order and in violation of Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) Petitioner was actually innocent; and (3) Petitioner's trial counsel was ineffective for not letting him testify on his own behalf. Resp't Ex. N at 2-8. The petition was denied. Resp't Ex. Q.

On June 11, 2012, Petitioner filed his *pro se* petition in the instant action. Doc. 1. Respondent filed a response, Doc. 11, and Petitioner filed a reply, Doc. 15. Petitioner also filed a "Motion for Summary Judgment" in which he essentially restates the arguments made in his petition and reply. Doc. 25.

## II.  LEGAL STANDARDS

### A.  Merits Standard

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs federal habeas petitions filed by state prisoners. Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a

substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). By limiting federal habeas review of state court decisions, AEDPA aims "to prevent federal habeas retrials and to ensure state-court convictions are given effect to the extent possible under the law." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citing *Colvin v. Taylor*, 324 F.3d 583, 586 (8th Cir. 2003)).

Under AEDPA, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell*, 535 U.S. at 694. "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively

correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Bar

To preserve a claim for federal habeas review, a state prisoner must fairly present his or her claim to state courts during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). A state prisoner who fails "to follow applicable state procedural rules [for] raising the claims . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id.* at 1151 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A state prisoner can overcome such a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy*

*v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.  DISCUSSION

Petitioner asserts nine claims in his petition. The Court will begin with Ground Seven (Actual Innocence), because Petitioner asserts that actual innocence excuses the procedural default of some of his other claims.

### A.  Ground 7: Actual Innocence

In Ground Seven, Petitioner asserts that he is actually innocent of the crime of which he was convicted. He argues that because he is actually innocent of the crime, it would constitute a fundamental miscarriage of justice not to review all of his claims, including those that have been procedurally defaulted.

Under the fundamental miscarriage of justice exception to procedural default, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. *See also Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002) (explaining that "a federal habeas court [can] address the merits of defaulted claims if a prisoner first prove[s] he [is] actually innocent of the charged crime or crimes") (citing *Schlup v. Delo*, 513 U.S. 298, 314-316 (1995)). To fit within this exception, Petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy*, 652 F.3d at 850 (quoting *Abdi*, 450 F.3d at 338). He must also show that "'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Schlup*, 513 U.S. at 327). In making this determination, the habeas court is permitted to consider

the probative force of all relevant evidence, regardless of whether it was "excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28. "[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. The Supreme Court has also instructed that "the *Schlup* standard is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

Here, Petitioner asserts that an affidavit submitted by Larry Smallwood recanting his trial testimony demonstrates that Petitioner is actually innocent of the crime of which he was convicted. At trial, Smallwood testified that on the evening of April 21, he was at Patterson's house, fell asleep there, and was awakened by Patterson shaking him and telling him something had happened and Smallwood needed to take his stuff and go. Resp't Ex. A at 490-94. Among the items Smallwood was asked to take was a coat that needed to be taken to Petitioner. *Id.* at 494. Smallwood testified that as he was leaving, he saw a car crash into another car, and that when he looked into the car, he saw a "dead man," *id.* at 494-95. Smallwood said that when he walked down the street, he encountered Petitioner and gave Petitioner the coat, *id.* at 497-98; that Petitioner asked if the police were still back at the scene of the shooting, *id.* at 499; and that Petitioner said that "he was going to get those two chicks or something like that," *id.* at 506. Smallwood also testified that sometime after talking with detectives on the case, he was assaulted and beaten up because he had "snitched" on Petitioner. *Id.* at 509-15.

In an affidavit submitted as part of Petitioner's state habeas case, Smallwood asserted that he was forced to testify against Petitioner because at the time he was facing charges on an unrelated crime and was told that if he did not testify, he would go to prison. Pet'r Ex. M, Doc.

15-1, at 19. Smallwood stated that he "was aware of the situation" but did not know any details of what actually happened, and that he knowingly lied for his freedom. *Id.*

This Court's task is to determine whether, in light of Smallwood's affidavit, it is more likely than not that "no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. This standard is not met. As noted by the state habeas court, Smallwood did not witness the murder, and his testimony did not strongly implicate Petitioner in the crime. The strongest evidence of Petitioner's guilt was a videotaped statement from Tonya Blocker, in which Blocker stated that she saw Petitioner shoot the victim. Resp't Ex. A at 550-610.[2] Smallwood's affidavit recanting his testimony does not call into question the strong affirmative evidence from Blocker's videotaped statement. Smallwood's affidavit also does not suggest that someone other than Petitioner committed the murder, nor does it provide Petitioner with an alibi. In light of all of these facts, the Court cannot say that it is more likely than not that any reasonable juror confronted with the Smallwood affidavit would have had reasonable doubt about Petitioner's guilt. Therefore, Petitioner cannot establish that the fundamental miscarriage of justice exception applies in order to permit this Court to review his procedurally defaulted claims.

To the extent that Petitioner is asserting a freestanding claim of actual innocence, that claim also fails. The Eighth Circuit has expressed uncertainty as to whether a petitioner may assert a freestanding claim of actual innocence in a habeas petition, noting that "[t]he Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would

---

[2] At trial, Blocker changed her account, denying that she had seen Petitioner at the scene. Resp't Ex. A at 563. She testified that she had been high when she made the statement in the videotape, and that the detectives had told her what to say and threatened to take her kids if she did not cooperate. *Id.* at 592-93, 631.

render unconstitutional a conviction and sentence that is otherwise free of constitutional error." *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (citing *House*, 547 U.S. at 554-55). However, the Eighth Circuit went on to explain that, if such a freestanding actual innocence claim did exist, the threshold would be "extraordinarily high," *Id.* at 816 (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)), and "would require 'more convincing proof' than the 'gateway' standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence," *id.* (quoting *House*, 547 U.S. at 555).

As discussed above, Petitioner cannot establish actual innocence for the purpose of overcoming procedural default. Thus, *a fortiori*, he also cannot meet the more stringent standard for a freestanding claim of actual innocence. Ground Seven will be denied.

### B. Ground 1: Violation of Due Process—Prosecution's Failure to Comply With Order to Disclose Audiotapes

In Ground One, Petitioner argues that his due process rights were violated when the State failed to turn over three audiotapes of witnesses' police interviews to the defense, despite the fact that the trial court had ordered the State to do so. On June 19, 2006, Petitioner filed a motion to compel the production of discovery, in which he requested that the State disclose the audiotaped statements made by witnesses Kolen Graves, Darryl Patterson, and Joel Boyd to the police. Resp't Ex. D at 31-32. The motion was granted by the trial court, and the State was ordered to produce the audiotapes within ten days. *Id.* at 33. Petitioner now alleges that the tapes were never turned over despite the trial court's order, and he argues that this shows that his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963).

As Petitioner acknowledges, this claim is procedurally defaulted due to Petitioner's failure to properly raise it in his direct appeal. Missouri requires the raising of constitutional claims at the first available opportunity. *See In re J.M.N.*, 134 S.W.3d 58, 73 (Mo. Ct. App.

2004); *In re T.E.*, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial errors, including constitutional claims of trial error, must be raised on direct appeal, and "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." *State v. Clark*, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993). Here, Petitioner was aware of the facts underlying this claim at the time of his trial, and he could have raised this claim on direct appeal. However, he did not do so. Resp't Ex. E at 15-19. Thus, it was procedurally defaulted. *See Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007) (*Brady* claim not properly presented to Missouri courts was procedurally defaulted and could not be reached by federal habeas court absent a showing of cause and prejudice).[3]

Petitioner argues that the ineffective assistance of his direct appeal counsel in not raising the claim of trial error is "cause" for the procedural default of this claim. Ineffective assistance of direct appeal counsel may constitute "cause" to excuse a procedural default, but only if the petitioner properly raised the claim of ineffective assistance of direct appeal counsel in appropriate state court proceedings. *See Edwards v. Carpenter*, 529 U.S. 446, 450-54 (2000). In Missouri, claims of ineffective assistance of trial or appellate counsel must be brought through a Rule 29.15 motion for post-conviction relief. Mo. Sup. Ct. Rule 29.15(a). An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15

---

[3] The fact that Petitioner raised this claim in his Rule 91 state habeas petition does not cure the procedural default. Under Missouri law, a Rule 91 state habeas action may not be used to present claims that could have been raised on direct appeal or in a motion under Rule 29.15. *State ex rel. Green v. Moore*, 131 S.W.3d 803, 805 (Mo. 2004). In addition, the state habeas court did not address the claim on its merits. Resp't Ex. Q at 1. Thus, the claim remains procedurally defaulted. *See Preston v. Delo*, 100 F.3d 596, 600 (8th Cir. 1996) (*Brady* claim was procedurally defaulted where Petitioner raised it for the first time in a Missouri Supreme Court Rule 91 state habeas petition, absent an indication that the Missouri Supreme Court reviewed the claim on its merits); *Anderson v. White*, 32 F.3d 320, 321 n.2 (8th Cir. 1994) (Rule 91 state habeas petitions "do not resurrect [the petitioner's] procedurally defaulted claims, for [the petitioner] has not shown that the Missouri Supreme Court addressed the merits of his federal claims").

motion or fails to raise it in the appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006).

Here, Petitioner raised a claim of ineffective assistance of direct appeal counsel in his *pro se* motion for post-conviction relief. Resp't Ex. J at 5, 8. However, his post-conviction relief counsel did not include it in the amended Rule 29.15 motion for post-conviction relief, Resp't Ex. J at 33-51, or in the appeal from the denial of that motion, Resp't Ex. K at 11-13. Therefore, the claim of ineffective assistance of direct appeal counsel was never properly before the Missouri courts and is procedurally defaulted. *See Interiano*, 471 F.3d at 856-57 (claims included in *pro se* motion for post-conviction relief under Rule 29.15 but not included in amended motion by appointed counsel or in appeal from denial of that motion is procedurally defaulted); *see also Wills v. State*, 321 S.W.3d 375, 386-87 (Mo. Ct. App. 2010) (under Missouri law, an amended motion for post-conviction relief supersedes a previous *pro se* motion, and claims included in a *pro se* motion for post-conviction relief but not in a subsequent amended motion are "not properly before the motion court because they [a]re a nullity" ).

Because Petitioner's ineffective assistance of direct appeal counsel claim is procedurally defaulted, that claim cannot serve as "cause" to excuse the default of the underlying nondisclosure claim. *See Fields v. Roper*, 448 F. Supp. 2d 1113, 1117 (E.D. Mo. 2006) ("Because petitioner's ineffective assistance of counsel claims are themselves procedurally defaulted, they cannot serve as a basis for demonstrating 'cause' and avoiding the procedural bar with respect to the underlying claims.").

Petitioner argues that his procedural default of the ineffective assistance of direct appeal counsel claim is *itself* excused because his post-conviction relief counsel was ineffective for failing to raise it in his amended motion for post-conviction relief after Petitioner included it in

the original *pro se* motion. That argument is without merit. In *Coleman v. Thompson*, the Supreme Court established the general rule that errors made by post-conviction counsel cannot serve as "cause" to excuse procedural default.[4] 501 U.S. at 752-754. In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court carved out a narrow exception to the *Coleman* rule, holding that errors by post-conviction counsel may in some circumstances serve as "cause" to excuse procedural default of claims of ineffective assistance of trial counsel. *Id.* at 1315. However, the *Martinez* Court clearly emphasized the limited nature of its holding: "*Coleman* held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review proceedings for claims of *ineffective assistance of counsel at trial*." *Id.* 1319 (emphasis added). Indeed, the Eighth Circuit recently expressly rejected the argument that an error by post-conviction relief counsel served as cause to excuse a procedurally defaulted claim of ineffective *appellate* counsel, stating, "We . . . decline to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal." *See Dansby*, 766 F.3d at 833. Thus, Petitioner cannot use the ineffectiveness of post-conviction relief counsel to serve as cause for his default of the ineffective assistance of direct appeal counsel claim; so he cannot use the ineffective assistance of direct appeal counsel as cause for his default of the underlying nondisclosure claim in Ground One.

---

[4] The Court in *Coleman* reached this conclusion from the twin premises that (1) "[t]here is no constitutional right to an attorney in state post-conviction proceedings" and (2) attorney error cannot serve as "cause" for a procedural default unless such error "constitutes a violation of petitioner's right to counsel." 501 U.S. at 752, 754. Since there is no constitutional right to counsel in state post-conviction proceedings, even the most incompetent post-conviction counsel does not violate the Constitution. In the absence of constitutional protection, the attorney-client relationship is subject only to the principles of agency law: "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.* at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

For all of the above reasons, Petitioner has not shown cause for the procedural default of the claim raised in Ground One. Thus, Ground One will be denied.

## C. Ground Two: Ineffective Assistance of Counsel—Failure to Request Continuance to Obtain Audiotapes

In Ground Two, Petitioner claims that his trial counsel was ineffective because, even though the state had not disclosed the audiotapes that it had been ordered to disclose, trial counsel nevertheless announced that she was ready for trial instead of requesting a continuance. Petitioner also alleges that trial counsel was ineffective in failing to preserve the claim for review.

Respondent argues that this ground is procedurally defaulted. The Court agrees. This claim was not included in Petitioner's amended motion for post-conviction relief as required by Missouri law, Resp't Ex. J, at 33-51, or in the appeal from the denial of that motion, Resp't Ex. K at 11-13. As discussed above, this renders the claim procedurally defaulted. *See Interiano*, 471 F.3d at 856.

As with Ground One, Petitioner argues that cause exists to excuse this procedural default because Petitioner's post-conviction counsel was ineffective in failing to include this claim in the amended motion for post-conviction relief after Petitioner raised it in the *pro se* motion. This argument gets him further this time, but it ultimately fails. In *Martinez v. Ryan*, the Supreme Court stated:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320. Missouri is a state where claims of ineffective assistance of counsel may not be raised until post-conviction proceedings. *See Arnold*, 675 F.3d at 1087 ("Missouri law does

not allow a claim for ineffective assistance of counsel to be raised on direct appeal.") (citation omitted); *see also* Mo Sup. Ct. Rule 29.15(a). Thus, *Martinez* applies in Missouri.

To overcome procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. Because the merits of the underlying ineffective assistance claim bear on the question of whether post-conviction relief counsel was ineffective for failing to raise the claim, the Court considers the second prong first.

In applying *Martinez,* the Eighth Circuit and district courts have evaluated the substantiality of underlying ineffective assistance claims using the *Strickland v. Washington* standard. *See Dansby*, 766 F.3d at 834-36 (analyzing alleged trial counsel errors using *Strickland* standard and concluding that "none of [the alleged errors] warrants an equitable ruling to excuse [the] procedural default" under *Martinez*); *Sund v. Young*, No. 5:14-CV-05070-KES, 2015 WL 4249405, at *4-*5 (D.S.D. July 13, 2015) (finding that petitioner could not show cause under *Martinez* because underlying ineffective assistance of trial counsel claim was not substantial under *Strickland*). To show ineffective assistance of counsel under *Strickland*, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To prevail on the deficient performance prong, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in

overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). With regard to the prejudice prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Petitioner's argument is that trial counsel was ineffective for failing to take additional steps to obtain the audiotapes of the statements by Darryl Patterson, Kolen Graves, and Joel Boyd, the Court will consider below what the record shows regarding each of those audiotapes and trial counsel's knowledge thereof.

### 1. Audiotape of Darryl Patterson's Statement

Patterson was the only one of the three audiotaped witnesses who testified at trial. As Respondent points out, the trial record is most consistent with an inference that Petitioner's trial counsel *did* obtain the audiotape of his statement, or at least was aware of its contents. The audiotape was discussed at several points during Patterson's direct examination: the prosecutor asked Patterson whether he remembered telling detectives something in the audiotaped statement; the judge referenced the audiotape and its transcript during a sidebar discussion; and the prosecutor asked permission to play a portion of the audiotape. Resp't Ex. A at 459-67. Petitioner's trial counsel was actively participating in these discussions and was actively objecting to the prosecutor's questioning during this part of Patterson's testimony, yet she gave no indication that she had not received the audiotape or was not aware of its contents. *Id.* In addition, during cross-examination of Patterson, trial counsel appeared to be familiar with

Patterson's activities preceding the shooting, including details that were not elicited on direct examination. Resp't Ex. A at 470-85.

Moreover, even assuming *arguendo* that trial counsel did not have the audiotape, Petitioner cannot show that her failure to request a continuance in order to obtain it constituted deficient performance or prejudiced Petitioner. Petitioner argues that an audiotape of Patterson's interview with police could have been used to impeach Patterson's trial testimony suggesting that he saw Petitioner arrive on the scene in a burgundy car, because a handwritten summary of Patterson's audiotaped statement suggests that Patterson told police he saw Petitioner arrive on the scene from a lot across the street and approach the victim's vehicle before the shooting, then *later* saw a burgundy car. Pet'r Exs. H & I, Doc. 15-1, at 10-15. However, for several reasons, it does not appear that this audiotape would have had significant impeachment or other value to Petitioner. First, the testimony that might have been impeached by the audiotape was vague: although Patterson testified at trial that Petitioner sometimes rode in a burgundy car and that he saw someone get out of a burgundy car at the murder scene, he was not at all clear about whether the individual in the burgundy car was Petitioner. Resp't Ex. A at 439-40. Second, Patterson's audiotaped statement to police *itself* tends to implicate Petitioner in the crime, because it suggests that he was at the scene immediately before the shooting. Pet'r Ex. H, Doc. 15-1, at 10. Finally, Petitioner's trial counsel *did* effectively impeach Patterson's testimony by eliciting evidence that at the time he saw these events, Patterson had been drinking alcohol, smoking crack, and injecting heroin, and that he did not know if the burgundy car at the murder scene was one he had ever seen before. Resp't Ex. A at 471, 479-80. Petitioner cannot rebut the presumption that trial counsel made a reasonable decision that she had sufficient evidence to impeach Patterson's testimony even without requesting a continuance for the purpose of

obtaining an audiotape that might have had some limited additional impeachment value. Moreover, even assuming that trial counsel was deficient for not requesting a continuance to obtain the Patterson audiotape, Petitioner cannot establish a reasonable likelihood that impeaching Patterson's testimony about exactly *how* Petitioner arrived on the scene of the shooting immediately before it occurred would have changed the outcome of the trial, particularly in light of the other evidence at trial, which included a videotaped statement from Tonya Blocker stating that she saw Petitioner shoot the victim. *See* Resp't Ex. A at 567-68. *Cf. Dansby*, 766 F.3d at 835 (no substantial claim of ineffective assistance of trial counsel where trial counsel did not locate additional impeachment evidence; noting that "how much to impeach a witness is generally a matter of trial strategy left to the discretion of counsel" and that in light of the other evidence of guilt, "additional impeachment of [the witness at issue] likely would not have made a difference in the outcome").

## 2. Audiotape of Kolen Graves' Statement

Kolen Graves did not testify at trial. Petitioner argues that Kolen Graves was a potential alibi witness for Petitioner and that trial counsel was deficient for not requesting a continuance to obtain the audiotape of his interview with police. However, the police report states that Kolen Graves told police that he "could not recall if [Petitioner] was at his apartment the day of the shooting." Pet'r Ex. J, Doc. 15-1, at 16. Petitioner offers no reason to suggest that the audiotape would have said anything different, other than speculation that because the State did not disclose the audiotape, the audiotape must have contained evidence favorable to him. This speculation does not come close to suggesting that trial counsel was deficient for not taking further steps to obtain the audiotape or that obtaining it would have changed the outcome of the trial.

### 3. *Audiotape of Joel Boyd's Statement*

Joel Boyd did not testify at trial. According to the police report, Boyd told police that Smallwood had told him (Boyd) that Smallwood was actually outside on the street when the victim was shot, rather than inside Patterson's home, as Smallwood testified at trial. Pet'r Ex. F, Doc. 15-1, at 8. Petitioner suggests that an audiotape of this statement could have been used to impeach Smallwood's testimony that he was in Patterson's house at the time of the shooting, and also to suggest Smallwood himself was a suspect. However, trial counsel apparently had access to this information in the police report, and Petitioner offers nothing to suggest that the audiotape would have given her any information she did not already have. Therefore, Petitioner cannot show that trial counsel's decision not to seek a continuance to obtain this tape fell outside of the reasonable range of professional assistance, nor can he show that obtaining the underlying audiotape would have changed the outcome of the trial.

For all of the above reasons, Petitioner has no substantial claim that trial counsel was deficient in her performance for proceeding to trial without the audiotapes, and he cannot show that a continuance to make further attempts to obtain them would have changed the outcome of the trial. Similarly, because there has been no showing by Petitioner that the content of these audiotapes was unavailable to trial counsel or contained any evidence favorable to Petitioner, Petitioner has no substantial claim that trial counsel was deficient in her performance for not raising the nondisclosure issue in her motion for a new trial, and he cannot show that inclusion of that issue in the motion for a new trial would have changed the outcome. Thus, Petitioner cannot satisfy the second prong of the *Martinez* inquiry.

In addition, Petitioner cannot satisfy the first prong of the *Martinez* inquiry, because he cannot establish that post-conviction relief counsel was ineffective under *Strickland* for failing to

include this claim in the amended motion for post-conviction relief. The Eighth Circuit has explained:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted). The same logic applies to claims of ineffective assistance of post-conviction relief counsel. Here, Petitioner's post-conviction relief counsel actively pursued two claims of ineffective assistance of counsel in the amended motion for post-conviction relief: one based on trial counsel's failure to object to admission of evidence concerning threats and assaults against Smallwood and Blocker, and one based on trial counsel's failure to call Petitioner as a witness. Resp't Ex. J. at 35-36. Counsel's decision to focus on these claims in the amended motion for post-conviction relief "falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, particularly in light of the above-discussed lack of merit in the ineffective assistance claim related to the audiotapes.

For all of the above reasons, there is no "cause" to excuse the procedural default of the underlying ineffective assistance of trial counsel claim. Because Petitioner cannot meet the fundamental miscarriage of justice standard for reasons previously discussed, Ground Two of the instant petition must be denied.

**D. Ground Three: Ineffective Assistance of Counsel—Trial Counsel's Failure to Object to Admission of Evidence Regarding Threats**

In Ground Three, Petitioner argues that his trial counsel was ineffective for failing to object to the admission of evidence regarding certain threats made against witnesses Smallwood and Blocker and evidence regarding certain physical altercations between those two witnesses and unknown individuals. This evidence included Smallwood's testimony that he was assaulted three times in connection with an interview he did with police about the murder, Resp't Ex. A at 508-15, and Blocker's testimony that she was attacked on one occasion by five people, *id.* at 587-88. According to Petitioner, the State used this evidence to suggest that Petitioner engaged in or was complicit in witness intimidation against Smallwood and Blocker. Doc. 15, at 12-13. Petitioner argues that trial counsel was ineffective in that she did not object to the admission of this evidence on the specific ground that its prejudicial effect outweighed its probative value, and he also argues that counsel was ineffective for failing to raise this issue in a motion for new trial. Petitioner raised this claim in his motion for post-conviction relief and in his appeal from the denial of that motion, and the state court addressed the claim on the merits. Resp't. Ex. M at 5-9.

As discussed above, to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson*, 773 F.3d at 904. When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state

appellate court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In addressing the merits of this claim, the Missouri Court of Appeals properly noted that the *Strickland* analysis applied. Resp't Ex. M at 5. The state court found that the deficient performance prong was not satisfied for two reasons. First, it found that trial counsel *did* make "repeated, significant efforts to keep this evidence from being admitted into evidence." *Id.* at 8. Specifically, the Missouri Court of Appeals noted that trial counsel filed a pre-trial motion in which she requested an order prohibiting the state from introducing evidence of threats and actions against witnesses in the case because the evidence would be highly prejudicial and had no significant probative value.[5] Resp't Ex. M at 7; Resp't Ex. D at 71-72. In addition, the Missouri Court of Appeals noted that "[d]uring trial, counsel made numerous additional objections when the evidence was being admitted." Resp't Ex. M at 8; Resp't Ex. A at 328-29, 509-514, 584-88). Second, the Missouri Court of Appeals found that the performance prong of *Strickland* was not satisfied because the evidence was admissible under Missouri law and trial counsel could not have been ineffective for failing to make a non-meritorious objection. Resp't Ex. M at 7-8. It stated:

> Evidence showing a witness's interest or bias is always relevant, even though the evidence has no bearing on other issues in the case. *State v. Mercer*, 611 S.W.2d 392, 395-96 (Mo. App. S.D. 1981). "A witness is subject to impeachment by a showing of a motive for the witness's testimony which might bear on his credibility." *Id.* "A witness may be cross-examined as to whether he has testified as the result of duress or fear, or as to whether he has been influenced or tampered with." *Id.* (internal quotes omitted).
>
> If the testimony of a witness may be influenced by a threat, evidence of the threat is admissible without regard to the source of the threat. The evidence is directed solely to the state of mind of

---

[5] The trial court ultimately permitted the State to introduce evidence of physical assaults against witnesses, finding that evidence that the witnesses were victims of assault was admissible so long as there was no inference connecting the acts to Petitioner. Resp't Ex. A at 329.

> the witness and not to the issue of the guilt of the Defendant except
> as the determination of the latter is affected by the credibility of the
> witness.

*Id*. The existence of threats made by anyone to a witness is relevant to the witness's motive. *Id.*

Resp't Ex. M at 8.

The Missouri Court of Appeals' application of *Strickland* was not objectively unreasonable. Given counsel's filing of a motion *in limine* and counsel's repeated objections to this evidence, it was not unreasonable to find that trial counsel was not deficient in her performance with respect to the issue of the threats. Moreover, this Court may not second-guess the state court's finding that further challenges to the admission of this evidence would have been unsuccessful under Missouri law. *See Arnold*, 675 F.3d at 1086; *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."). An issue of federal law is not raised unless the admission of this evidence was "'so extremely unfair that its admission violates fundamental conceptions of justice,'" such that its admission violated the due process clause. *See Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Given the relevance of this evidence to the question of witness bias, Petitioner cannot show that its admission was "so extremely unfair" as to amount to a denial of due process. *See Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (state court determination that counsel's act of opening door to prior bad acts evidence otherwise admissible under state law was not an unreasonable application of *Strickland*, where admission of the evidence did not amount to a denial of due process).

For the above reasons, the Missouri Court of Appeals reasonably applied *Strickland* to this claim, and Ground Three is denied.

### E. Ground Four: Ineffective Assistance of Counsel—Failure to Call Petitioner as a Witness

In Ground Four, Petitioner argues that his trial counsel was ineffective for failing to call him as a witness in his own defense. Petitioner claims that he wanted to testify at trial, but that trial counsel advised him against testifying because doing so might have allowed the state to raise the issue of his prior assault conviction. Petitioner further claims that trial counsel never explained to him that he could act against her advice, and believed that he was bound to do as she advised. Petitioner raised this claim in his amended motion for post-conviction relief and on appeal from the denial of that motion, and the Missouri Court of Appeals found it to be without merit. Resp't Ex. M at 9-12.

The Missouri Court of Appeals found that the record "conclusively refutes [Petitioner's] allegation that he wanted to testify at trial but did not testify because counsel failed to inform him of his right to testify." Resp't Ex. M at 11. The Missouri Court of Appeals stated:

> At trial, defense counsel told the court that she had thoroughly explained to defendant "his right to testify" but that she had advised him against doing so. Counsel also assured the court that she was not forcing [Petitioner] to do what she wanted him to do. In addition, [Petitioner] never raised the issue of his desire to testify during the court's examination of [Petitioner] following sentencing. During this examination, the court asked [Petitioner] if there were any defense witnesses he wanted to testify at trial and [Petitioner] indicated that the only witness he wanted was his roommate. When the court inquired as to whether there was "anything else" [Petitioner] wanted to tell the court, [Petitioner] replied "no." [Petitioner] never told the court that he wanted to testify in his own defense.

*Id.* This Court is required to presume that the state court's factual findings are correct, *Rice*, 546 U.S. at 338-39, and the Court may only provide relief if those findings are not supported by the record. *Jones*, 359 F.3d at 1011. After reviewing the relevant portions of the record, the Court finds that they support the appellate court's factual findings. Resp't Ex. A at 666-68; Resp't Ex. C at 14-17. The Court further notes that Petitioner stated in his direct appeal brief that he

"exercised his right not to testify, and did not subject himself to cross-examination on his prior convictions." Resp't Ex. E at 35. Moreover, it was not an unreasonable trial strategy for counsel to recommend that Petitioner not testify, in order to avoid the jury hearing about his prior assault conviction. Given these facts, Petitioner cannot establish that counsel failed to inform him of his right to testify, so he cannot show deficient performance under *Strickland*. Additionally, Petitioner cannot show that he wanted to testify on his behalf and would have done so had counsel informed him of his rights, so he cannot show prejudice under *Strickland*.

For all the above reasons, Ground Four must be denied.

**F. Ground Five: Trial Court Error—Overruling of Petitioner's Objection and Request for Mistrial Based on Admission of Evidence of Foot Chase**

In Ground Five, Petitioner contends that the trial court erred by overruling his objection to evidence that police officers had to chase him when he was arrested, and by denying his motion for a mistrial. Petitioner maintains that the court's decisions were contrary to its earlier ruling granting his motion *in limine* to keep such testimony out of the case. He also argues that the testimony brought in evidence of uncharged criminal behavior that was highly prejudicial while being irrelevant to whether he committed the murder.

To the extent that Petitioner's claim is that the trial court erred in ruling on an evidentiary matter or in determining the appropriate sanction for an improper remark, the claim is not cognizable for purposes of habeas review. "Rules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d at 1018 (quoting *Adail v. Wyrick*, 711 F.2d 99, 102 (8th Cir. 1983)). The Eighth Circuit has found that "there is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." *Harris v. Bowersox*, 184 F.3d 744, 752

(8th Cir. 1999). Instead, the habeas petitioner "must show that the alleged error rendered the entire trial fundamentally unfair—that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different." *Id.* (quoting *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991)).

The relevant facts are as follows. During direct examination, the officer who arrested Petitioner testified that he detained Petitioner and two other persons in a vehicle pursuant to a traffic stop. Resp't Ex. Aat 542. The prosecutor asked the officer, "Upon detaining these individuals, what, if anything, did you do?" *Id.* at 543. The officer replied, "Requested—after contacting each one of the parties at the scene—there had been a brief foot chase from the vehicle." *Id.* Defense counsel objected. *Id.* The court sustained the objection and ordered that the answer be stricken from the record. *Id.* Defense counsel then requested a mistrial. *Id.* The court denied the request, finding that nothing highly prejudicial had been introduced. *Id.* at 544.

The isolated remark that "there had been a brief foot chase from the vehicle" did not render Petitioner's trial fundamentally unfair. As the Missouri Court of Appeals pointed out, "[t]he statement was isolated and vague"; "the court sustained [Petitioner's] objection and ordered the statement to be stricken from the record," and "the comment was inconsequential in view of other evidence of guilt." Resp't Ex. I at 2. In light of these facts, the state court's decision not to grant a mistrial based on this remark did not violate Petitioner's due process rights, and Ground Five will be denied.

### G. Ground Six: Trial Court Error—Allowance of Prosecution Questions to Venire Panel

In Ground Six, Petitioner argues that trial court violated his right to a fair trial and a fair and impartial jury by permitting the prosecutor to ask the venire panel (1) if they needed more

than one witness to make a decision; (2) if they would discount other evidence if no gun was found; (3) if they would hold the state to a higher burden of proof than was required by law; and (4) if they would still be able to listen to testimony if they heard that a person, while committing a crime, became a victim of a crime. Petitioner raised these claims in his direct appeal. Resp't Ex. E at 40.

The Missouri Court of Appeals found that Petitioner had failed to preserve this claim as it relates to questions (2) and (3), and it reviewed those parts of the claim only for plain error under Missouri Supreme Court Rule 30.20. Resp't Ex. I at 3-5. Thus, the claim is procedurally defaulted as it relates to questions (2) and (3). *See Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) ("A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds."); *Clark v. Bertsch*, 780 F.3d 873, 876-877 (8th Cir. 2015) ("[A] federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error."). Petitioner has provided no cause or prejudice to excuse the procedural default, so this Court may not review the defaulted aspects of his claim.

The Missouri Court of Appeals found the only aspects of this claim that were preserved were those in which Petitioner contended that the trial court erred by permitting the prosecutor to ask questions (1) and (4) because they improperly sought a commitment from the venire panel. Addressing these arguments on the merits, the Missouri Court of Appeals found no error, because Missouri courts have found that *voir dire* questions regarding the need for more than one witness to prove the elements of a crime are permissible, and because the state's question about

victims who were committing crimes was a proper attempt to determine whether a potential juror would be biased if the victim was also a criminal. Resp't Ex. I at 3-4.

To the extent that Petitioner's contention is that the state court erred in its findings regarding Missouri law, such a contention is not cognizable on habeas review. Moreover, this Court may not second-guess the state court's finding that further objection to the admission of this evidence would have been unsuccessful under Missouri law. *See Arnold*, 675 F.3d at 1086; *see also Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."). Petitioner has not cited, and the Court has not found, any authority to suggest that these questions violated Petitioner's rights under the due process clause or that the prosecution having asked them was contrary to any other federal law. *See Williams v. Groos*, 77 F.3d 259, 262 (8th Cir. 1996) (prosecutor's remarks about the burden of proof during *voir dire* may have constituted an error of state law but did not deny petitioner due process under the constitution where the jury instructions correctly defined reasonable doubt).

For all of the above reasons, Ground Seven will be denied.

### H.  Ground Eight: Ineffective Assistance of Post-Conviction Relief Counsel

In Ground Eight, Petitioner claims that he received ineffective assistance from his post-conviction counsel. It is well established that a claim of ineffective assistance of post-conviction relief counsel is not cognizable on habeas review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such

proceedings."); *Martinez*, 132 S. Ct. at 1319 (noting that there is no "freestanding constitutional claim" for ineffective assistance of post-conviction relief counsel). Accordingly, Ground Eight will be denied.

**I.  Ground Nine: Violation of Missouri Rule of Criminal Procedure 22.09**

Petitioner argues in Ground Nine that, after the state filed a felony complaint against him, the state violated the Missouri Rules of Criminal Procedure by obtaining an indictment from a grand jury in lieu of holding a preliminary hearing. Respondent argues that this claim is procedurally defaulted because Petitioner did not raise it on direct appeal, Resp't Ex. E, or in his Rule 29.15 motion, Resp't Ex. J. The Court agrees. Because the claim is procedurally defaulted and Petitioner has not established cause or prejudice for the default, this court may not review the claim.

Moreover, because this claim is directed entirely to an alleged error under state law, this claim is not cognizable for purposes of habeas review. A district court may only entertain habeas claims brought by a state prisoner that raise violations of federal law, the Constitution, or treaties of the United States. 28 U.S.C. § 2254(a). This means that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle*, 502 U.S. at 67-68; *Nunley v. Bowersox*, 784 F.3d 468, 471 (8th Cir. 2015) (quoting *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994)).

**IV.  CONCLUSION**

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the

petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a Certificate of Appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner James Graves' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Summary Judgment (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2015.